The most critical issue in this case is whether or not the trial court's questioning of the witnesses during the trial went too far. And it is true that judges have a right to ask questions of witnesses, but whenever they do, they must preside impartially and give the impression to the jury that they are presiding impartially. In this situation, is there body language or inflections that we have to take into account, or are you willing to rely on the text of what the transcript shows? Well, I think there's a number of things that we can rely on. We can rely on, first, the fact that the court here – we start with the fact that the case, the prosecution's case and the defense case, came down to a credibility contest between the victim, the alleged victim and the defendant and the witnesses that supported the alleged victim's testimony and the witnesses that supported Mr. Alamin's testimony. So it was basically a credibility call. Then we start with the fact that the court in this case did not examine one single government witness and yet interrogated and examined 75 percent of the defense witnesses, including the defendant. Now, that by itself is not, you know, the only reason that we argue or are arguing that the judge was not – was impartial. Well, my point is with respect to the words said that, you know, we weren't at the trial. All we have is the transcript. Right. Are you relying on the text of what was said, or is there something – is there an argument with respect to the intensity or inflections or body language? Well, there is. Well, okay. I need to know about that, because all we have to deal with, it seems to me, is the text of the transcript. Well, my problem with this, before you answer the question, is, is there anything in the record that says anything about the body language or the – any of these things that are not just in the text? Is there an affidavit by counsel or was there any comment made at the time the questions were asked? Is there anything that we can look to other than – I mean, then you're saying to us now, you know, he did it in a sarcastic way or he did it in an aggressive way. That would be one thing. You're just saying it to us. But is there anything we can look to, to see any of these other factors that Judge O'Scanlan mentioned? Well, first of all, the defense attorney, when he filed his motion for a new trial, stated in the motion that the tone and manner in which the judge asked questions of the defense witnesses showed that the judge did not believe the witnesses. And when the prosecution opposed the motion for a new trial, they did not dispute the judge's tone and manner of asking questions, but stated that it really was irrelevant and that we have to look solely to the nature of the questions that were asked. And in this particular case, I think it's unique in the fact that – I mean, I think, you know, this Court can take judicial notice of the tone and demeanor of this particular judge when asking questions. And, you know, it's not a laughing matter. I mean, when you – Well, that's an odd legal proposition. We can't. I mean, but the fact is that the defense attorney did make a point of stating in his motion for a new trial that the judge's tone and demeanor, excuse me, displayed before all, particularly the jury, that the judge did not believe this. Okay. But we test that assertion against the language of the transcript. Right. Then if we go also to the test of the transcript, even without knowing who this particular judge is and his reputation, and even without – Counsel, I've got to tell you, I find that particular argument personally offensive. And I think that it would not advance your case to suggest that somehow or other this particular judge should be looked at any differently than any other judge. No. That's not my argument, Your Honor. I'm not. I'm not. But I don't – you know, I don't think we can discount it. That's not what the argument rests on, and that certainly didn't put that in any of my pleadings. But if we look at the questions that the judge asked, and, yes, the judge has a right to clarify evidence, but in this particular case, if you look at all of the questions going through witness after witness after witness, the judge is eliciting testimony from the witnesses to show that what they were stating to undermine their credibility and to help the prosecution build a better case. So, for example, you know, if we go to the first – Before you – to focus that argument, I've read through all of the transcripts. I'm sure all my colleagues have, too. And without the benefit of body language or anything else, I find a lot of the questions to be clarifying questions. But there are some that I'd like to – and have you focus on which ones you think they are, where an argument can clearly be made that they may have crossed the line. I'd like you, if you can, focus on which ones you think are the most objectionable, rather than a whole litany, and on which witnesses. And I would focus, if you can – I mean, focus on the worst and then reason from there, perhaps. Well, I think the first – the most objectionable examination would be the examination of the defendant, Mr. Al-Amin. I mean, all of the cases, you know, that's really where the judge always has to tread carefully. And in this particular case, the district court went to, you know, great lengths to flesh out Mr. Al-Amin's story in a way that made it clear that the judge did not believe his testimony. And I think that, you know, for example, he was asking him about the passport. He said, did you – Could you cite the transcript that you're citing? Pardon me? Would you cite where it is that you're – Yes. And if we go to page 62 to 63 of the excerpt. I think I must have different pages. Do you have a transcript reference? Because mine – The transcript would be page 775. Okay. And 776. The district court is asking the judge – I mean, excuse me, asking the defendant about the money that he testified that he had tried to send back to Shaikh Ali's family in Bangladesh. And he said – if you go back down to line 14, he said, I have an account in Bangladesh. I wrote a check on that account. He says, you wrote a check. Did you get a check, you know, indicating that it was paid, et cetera, et cetera. He says, did you bring them to court? Right now I don't have it. It was at the house. But now where are they? I don't know. And then he says, did you tell your lawyer about that? And then the defense attorney says, I'm going to object to that question. And he overrules it. And he says, all right, let's find out. And the defense attorney again says, I would object to any statements he made to his lawyer, Your Honor. And he says, well, no, that's not – that's a privileged communication. And then he goes on and says, well, more importantly, did you tell the investigator that you had those documents at your house? And this is clearly a line of questioning from a judge that is designed to show that the defendant is either not telling the truth, has something to hide, or whatever. And it is – it's – and then for the defense attorney to have to object that the judge is going too far in examining the question the judge overrules it, this only just – this just makes it worse. And the other part of the judge's testimony, which is particularly – Well, I take your point on that to a point. But if we, as the rule does contemplate, allow district judges to question witnesses, why isn't – I mean, I understand there's some effects on the jury, but why isn't it appropriate for an attorney to object? I mean, can it be just that the force – because the attorney has to object, that that's going to turn it into a credibility issue, or what? Because otherwise – I've been in a situation where the – you know, trying cases where the judge asks the questions, and if you think – I understand, you're going to be more deferential than to your opposing counsel. But if the judge asks an improper question, you can't – you're going to have to object. Otherwise, the rule would be either that you can't object at all because it's inherently prejudicial, or if you have to object, it is prejudicial. That's what I'm trying to understand when you say, well, he had to object. He did object. Well, yeah. So what weight should – in other words, what weight should we give that? Well, I think it's not a question – it's not simply a matter of the fact that he had to object or he did object or he didn't object. It's just taking the whole thing together. Here is the district court. It wouldn't have been inappropriate, for example, if a prosecutor was asking these questions, to try to flesh out, to try to show that the defendant was hiding something or the defendant was not telling the truth or the defendant was whatever. I didn't – you know, and a defense attorney can object. I think that that goes beyond the attorney-client privilege. But when it's coming from a judge, it's clearly a line of questioning. It's not simply that there was an objection. It is the – taken together, it is displaying before the jury that this judge did not believe the defendant. And that – and all of the cases say clearly a judge has a right to clarify, ask questions, and so on. But when – but the judge has above all to preside impartially and not to give the impression that he believes one set of witnesses or the defendant over the other. Do you regard this as impeaching testimony? Or is it impeaching questioning? Yes, it is. Because it is – you know, the judge is saying, you don't have anything to back up what you just said. You know. And in fact, he said, well, do you have them? Well, yeah. I mean, he's basically saying, I have these papers, but I didn't bring them with me. You know, it's like, well, why didn't you bring them with you? You know, it just gets into a contest between the defendant and the judge over how can you verify what you just said. We go into also the district court asked the judge on page 777 of the transcript. He asked him, he says, are you – he's looking – I believe he's looking at the passport. And he says, you indicate your current occupation, that you're an accountant. Yes. Are you trained as an accountant? Not particularly training, but, you know, have you worked as an accountant? And yes. And then the judge says, do you know that an accountant has to be accurate in what he puts down in the books of any person? I mean, that is an insinuation that this defendant does not regard the truth and accuracy as something to be very important, but that he ought to know that because he worked as an accountant. And it's, you know, and I think the – all of these questions are designed to help the government, to bolster the government's case. If you go also into the sister-in-law, Shelley. Before you skip one whole area, do you understand why the judge asked about the other child that he had and when he was born and where the daughter is now? And when he says she's with the grandparents, wanting to know who the grandparents are and where they are, do you know what that was all about? You know, I don't know, Your Honor, because I wasn't there. I can only speculate that perhaps, you know, because this is all involving immigration law and that sort of thing, perhaps it was something like that. I couldn't, you know, read the judge's mind. Perhaps the prosecution can. But it's still – it is – it's still an interrogation of, you know, who came to this country, you know, where are all the – you know, and it is well known that if you immigrate to the United States, you know, you have one wife. You bring one wife that's your legally married wife. Maybe it had something to do with that. But, you know, even going – if you go also over to the testimony of the sister-in-law, Shelley Chowdhury, in which there were motions regarding whether or not she could be cross-examined on allegations that she may have fraudulently obtained her citizenship by marrying somebody simply for – to get her green card and then to become a citizen. And there were objections by the defense about that line of questioning. And then that was overruled and so on. But then it was the court that went into great detail about Ms. Chowdhury's relationship with the man that she had been married to and who she had – that was able to obtain her green card and her citizenship. And this – this whole line of questioning is insinuating that – that this particular individual has taken advantage of – improper advantage of immigration laws and has something to hide and that she's not credible. I mean, if we go even over to the – I can't remember the name of the individual because the names – I'm sorry. Just – I don't register right, given the foreign names. For example, there was the witness that testified that he had seen – he had gone to the grocery – I believe it was a store – and he had seen this witness, this fight between Halim, who was one of the prosecution witnesses, and this other individual. And he looked out in the parking lot. He didn't see Mr. Al-Amin there. And the district court went into great detail about what exactly he could see from the parking lot and that sort of thing. And the only import of that line of questioning could – would have – to show that the witness really did not know what he was talking about, either that he was lying or that he just really didn't know – have enough information to know in order for the jury to believe his testimony. It's the same thing with the other witnesses. Then let's pursue that second option. If we give the benefit of the doubt to the district court, a district court, who is confused as to whether the person really has seen or was in a position to see, are you saying it's prejudicial for the judge to ask a question that you're sitting as defense counsel and you're delighted that the prosecutor didn't pick up on and the judge then ruins your great strategy as so many times happens when judges mess around with the questioning and suddenly asks a question to say, well, where were you standing? And it's innocent clarification, and it impeaches the heck out of the witness. Is that automatically then prejudicial, improper questioning? Well, I think it would have to depend upon the length at which the point is trying to be made by the court. So, for example, in terms of clarification, the witness said, I was standing inside the store and I could look out and I could see the parking lot. And then the court says, no, where did you say you were standing? Well, I was standing, you know, directly in front of a plate glass window. I don't think that is going too far. But, you know, when you start to get into the details, the kind of details that a prosecutor would ask to try to show that the witness really could not see very well, that is where it goes. Okay. Here's what I'm having a little trouble with. The trouble is we're not sitting in this trial, okay? But if I'm sitting as a judge and I have a feeling that a witness is dissembling and that the prosecutor hasn't brought it out, but I think as a judge that there's reason to believe that the witness is actually lying, are you suggesting that the district judge just has to sit on that and let that happen, let the jury be misinformed, misled by a witness who is clearly lying, that the judge should not ask any questions that would tip the prosecutor to explore? For example, there were the questions of a couple of the witnesses where Judge Real asked about who they had spoken to outside the courtroom in advance of their testimony, the kind of questions that you would ask normally if you were a prosecutor trying to test whether this group of people had collaborated in their testimony. The prosecutor hadn't seen fit apparently to do that. Judge Real then asked, did you talk to anybody about your testimony? And then the prosecutor comes back and says, oh, by the way, tell us about your contacts with the defense investigator. Now, if, posit that Judge Real believed that these people had all gotten together and concocted a common story because they're all family and friends and that the prosecutor was doing a lousy job of bringing that out in his view and he thought that would let the defense get away with a story that he believed was just wrong, should he just, again, to make my, given sort of the facts of this case, should he just sit on that and leave it to the prosecutor and the prosecutor doesn't ask those questions? Yes, he should sit on it, because this is not an inquisitorial system here. This is an adversarial system, and if the prosecutor hasn't, you know, picked up on something, hasn't figured out the right kind of questions, whether they're standard, you know, questions to impeach a witness or whether they're just simply, you know, relevant to this particular case, the judge is not supposed to do the prosecutor's job for him. And, you know, and if that's what, it's one thing, for example, if the prosecutor has a hard time or the defense attorney has a hard time laying a foundation, you know, sometimes lawyers have troubles, you know, asking, you know, question A, question B, question C, to lay a foundation and struggling and a judge comes in and asks, lays the foundation for, that's a completely different thing. But if the judge is sitting up here and thinking, these witnesses are the biggest bunch of liars I've ever seen in my entire life and this prosecutor is terrible, why, if I were that prosecutor, I would hammer them this way. You know, and there's really, that's just too bad, Judge. This is the, this is the system that we have, and the judge has to be very, very careful about that. Well, what about if the shoe's on the other foot? I'm sorry? What about if the shoe is on the other foot, that the judge is beginning to get the idea that this particular defendant is getting railroaded and needs a little bit of help and because of poor representation by counsel, let's say, and engages in what you suggest is the same kind of prejudicial kind of questioning? Now, we don't have an opportunity to review that because presumably that person would have been acquitted, but what about that? I think the same thing applies. I mean, you know, because it's the same thing. Why doesn't the judge have a right to prevent a reversal by seeing that the defendant doesn't receive ineffective assistance from counsel? Does the government have the same right to have effective assistance from the prosecutor and he has to protect that right? No, but... So then why are they the same? Doesn't he have an obligation, if counsel is being ineffective, to try to protect the trial and protect the defendant's rights? The judge has an absolute duty to protect the constitutional rights of the defendant and to see that the trial is conducted fairly. But, you know, sometimes it's also a question of where, you know, if the court, if the judge is concerned that the defense attorney is just, you know, pathetic and just doesn't, you know, can't litigate his way out of a paper bag, I mean, he can be concerned, but, you know, it's a question of, of... First of all, there's a lot of factors that are going on regarding the evidence and the case and the strategy and so on that the judge, you know, isn't privy to. But it's also important, you know, if the judge, for example, wanted to, you know, stop the proceedings outside of the presence of the jury and, you know, call the counsel up to the counsel and say, you know, I'm very concerned, I think you're, I wonder if you're really, you know, up to snuff here, this case may, you may be way in over your head, and I'm very concerned, that's a different story. But to do it all in front of the jury and for the judge to take over and to do the defense's job for him because the defense attorney just isn't protecting him, I think that, that is a point I think the government should complain about that. They may not, you know, if there's an acquittal, obviously they can't, you know, I mean, excuse me, I don't know, it's just, yes, the judge has to preside impartially for both sides, and they can't, you know, I'm not saying it's not, that it's an easy call, you know, and that it's just a. But you would draw the line, I gather, that a judge can ask questions that are legitimately designed to clarify what's happening so that he understands that fully, but that you would say he could not assume any of the prosecutorial duties when the prosecutor is failing to do his job properly. Would that be the line you'd want us to draw? Or what would. Absolutely. Is that how you would phrase what's proper and what's not proper? Would he have a better way to. I would say that it is improper for a judge to take over and elicit testimony from a witness to clarify that the witness is not telling the truth because the prosecutor didn't do a very good job. Yes, the judge is not permitted to do that in our system of justice any more than the. Well, but take what Judge O'Scannon has said. Suppose he did it for both sides. I'm sorry? Suppose he did it for both sides fairly. He found both counsel somewhat inadequate, and in order to make sure that the jury really knew what was happening, he helped both sides out equally. Well, I suppose if we had a situation like that, we might, you know, maybe overlook it a little bit and say, well, this judge was trying to be fair. He was just, you know, injecting, becoming a little bit more of an activist-type judge and he over. But in this particular case, we most definitely did not have that type of a situation. There were many questions that if I had been trying this case or, you know, looking in hindsight, I would like to have clarified a lot of things from the witnesses for the prosecution, and that wasn't done. And then you take in the overall picture here, you have a jury that is, many of them have probably never served on a jury before, and they're coming in. The judge is in an exalted position. The judge is not just somebody that they have a great deal of respect for, but someone who basically they're taking all their cues from this individual, not only as to how to deliberate and jury instructions, but also about, you know, when to. Well, I think we understand that. Could I ask a question because of the time? Could you direct us to a case? What's the closest case, reported case, that you've got that you say that this approach is the kind of conduct? Well, I think that the Second Circuit case of U.S. v. Solani is a very good case. I was excited in the brief. I didn't hear the name of the case. U.S. v. Solani. Solani. Solani, in which the court, you know, is very concerned about, you know, when a judge takes over and displays bias and, you know, believes that the accused is guilty and also inappropriate advocacy in interrogating the defendant, particularly in a case where the 74 fed 3387, when the defendant's defense basically rests on his credibility and the credibility of his witnesses for the court to step in and to destroy that or attempt to destroy it is very problematic in our system of justice and requires reversal. And I don't mean, you know, I wanted to get back to, as I'm concerned about Judge Scanlon's concern about my comment about the demeanor, I'm trying to be a little light-hearted here. I'm not resting my case on gossip, you know, or anything like that, or, you know, war stories. I am, but there was. I think that. You're not making the argument that this case was tried by Judge Reel and there are other good reasons why it should be reversed. It's not. No, no. And I'm not. And I wouldn't. I put that in any of my pleadings and so on, and I certainly don't. But what I guess I started out from that because of the fact that the defense attorney, you look at a lot of these cases where the courts have reversed or have been asked to reverse based upon overactive judicial interrogation of witnesses and so on. A lot of times there wasn't an objection. And many times you're talking about the cold record. And so I only point out that here the defense attorney did make a point when he filed his motion for a new trial to state something about his observation, about the court's demeanor in interrogating the witnesses. And when the government filed its opposition, they really didn't dispute, oh, the judge's demeanor was, you know, he was very even-tempered, mild-mannered and so on. What the government said was that basically we just have to go to the questions and we cannot consider that. And that's the thing. So I think it's the totality of circumstances here. It's the fact that it was one-sided, extreme, and boring in on the defendant's relationship with his lawyer and so on. It was just over the top. Thank you. Thank you, counsel. Good morning. May it please the Court. Caroline Witkoff on behalf of the United States. I'd like to focus on the issue that has occupied the Court's questioning, and that is the issue of whether or not the Court's questioning of defense witnesses in this case did give the appearance of bias to the jury. And we recognize that the Court questioned a large number of defense witnesses, but it's important to look at that questioning in terms of the content of the questions themselves and also in the context of the trial as a whole and the examination of those witnesses. And when we do that, it's apparent that most of the questioning was on clarifying issues and the questioning was largely on collateral issues. Even if we look at the questioning of the defendant himself, the Court questioned him on four particular areas, payments that he made to the victim, which or her family, which when the jury was instructed on the law, they were told that whether or not services are paid for is not a defense to involuntary servitude. So that was a collateral issue. He was also questioned by the judge about his first wife and son. What was the purpose of the questioning, then, if it was a collateral issue and it didn't matter? What was the reason for the questioning? Well, they were in large part follow-up on questions that had been asked in cross-examination. But if he thought it didn't matter, you say that that's where we shouldn't worry about it, because it really didn't matter. Well, where it's important that it's collateral is that if we look at cases such as Felani or the Cyan's case, cases which the defense has relied on heavily, in those cases it was important that the questioning of the defendant was on the central issues and that the Court probed inconsistencies in the defendant's testimony about what was at the heart of the defense. Here there were no questions that touched on what was the heart of the defense testimony and the heart of the defense case, testimony that the victim was treated well by the defendant, that she was happy during the time that she worked for him. Really, the heart of this case is credibility. You've got a lot of people on each side telling directly, diametrically opposite stories, including the defendant. And the question is, who are you going to believe? And when we look at what the questioning was on in this case, the questioning was on these collateral issues that did not touch on what the substance of those key witnesses' testimony was. The Court, through his questioning, did not develop any evidence that pointed out inconsistencies or credibility problems with the witnesses. Do you think the questioning about the money and the checks, and did you really send us how many payments, and did you have records, did you tell anybody about the records you had? You don't think that was designed to or had an effect of suggesting maybe he's not telling the truth? You Honor, no. I think that in terms of the impact of the Court's questioning, I think, was very minimal in this case. The government did not capitalize on it in its arguments. The credibility call came down to a question of did you believe the defense witnesses or the government witnesses? And there was nothing in the Court's, what was developed in the Court's questioning that. What about his questions that triggered, were you the trial lawyer? Yes, Your Honor. Triggered your follow-up on the, Larry, the defense investigator, where he asks Neshima about contacts on this case outside the court, and then that triggers you to start asking about whether, which I read as information to find out whether they've been coaching of these witnesses. I'll come up with the same story. He does the same thing with Azad, the 18-year-old. Well, those are the only two witnesses where there was that line of questioning. Well, he said it was all collateral, though. Well, with respect, largely collateral issues. With respect to those two witnesses, the witnesses both denied that there had been any type of collusion, and there was nothing developed from there. And it's significant that the Court did not do what was found to be improper in other cases, such as Henya Garcia, Felani or Sands, by badgering the witness, then insinuating that the witness was not telling the truth. There were no comments by the judge in this case of any of the witnesses saying, you know, demand, tell me the truth, is what you're telling me this. And those kinds of questions have been found to be improper. And in the Felani case, the Court pointed out that — I'm sorry, I believe in the Sands case, the Court pointed out that even in cases where courts have asked that form of question of, you know, is what you're telling the jury such and such, so long as it's on a collateral issue, it hasn't been a problem. In both the Felani and the Sands cases, it was very different than here, because what the Court did was questioned the defendant first far more extensively. Here, the questioning of the defendant by the Court was on 6 pages of 80 pages of testimony, 7 percent of the questioning, whereas in those cases it was more than 20 percent of the questioning. And in those cases, they also probed on the central issues of the defendant's account of what happened. I agree with you that this case is not — doesn't fall — isn't dictated by those other cases, that this doesn't — isn't the same. But that doesn't really answer the question of whether this is something that is sufficiently improper or prejudicial. And it seems to me we ought to better to discuss these specific episodes and why they are or aren't. For instance, the questioning about did he — is he trained as an accountant? When he says he's an accountant, he wants to know that he's trained. Well, that seems to be, you know, not too harmful. But well, have you worked as an accountant? Do you know an accountant has to be accurate in what he puts down in the books of any person? What's — why would he say that, and what effect does that have when a judge says,  What's the purpose of that? Here, I can't speculate on what the purpose is, but I will say that it's significant that that was — those were three questions and that when the defendant said that he did understand, the Court then didn't follow up and pursue that line of questioning. In terms of the impact on the jury of these questions, there was not prejudice from the Court's questioning because the Court in this case allowed the defense, the full opportunity to engage in his questioning of the witnesses and then the government to cross-examine the witnesses. I believe that that one area that Your Honor has brought up about the pursuing the questioning about the possible collusion was the one area where we did follow up on the Court's questioning, but we never argued any collusion and didn't get anywhere with that line of questioning. With respect to — There was at least a curative instruction or at least a construction given that — with respect to the judge's questions. Twice, Your Honor. At the beginning of the trial and at the end of the trial, the Court specifically instructed the jury that they should not infer anything from any comments he made or any questions. Well, what about the fact that — made primarily in the briefs, less so here — that the questioning was of nine of their 12 witnesses and none of the government's witnesses? Can we take that into account? The number of witnesses is a factor to take into account. But when we look at the actual content of those questionings and the context of those testimony of those particular witnesses, I submit that eight of those witnesses, the questioning is clarification and nothing more than clarification. Which one are you saying it's not? Pardon me? Which one is — are you saying it is not clarification? There are — You said eight out of the nine is just clarification. Yes. Which is the ninth? Who's the lucky ninth? Well, with respect to the questioning of the defendant, I'd say the question about the — you know, the question about the accountant, detained as an accountant, might be hard to say that that's purely clarification. However, I don't believe that the questioning about do you understand that an accountant has to be accurate is enough to cross the line in this case. What about his pursuing the exhibit you didn't pursue, exhibit 21? That was a follow-up on questioning that we had asked. And all he asked was whether or not he had seen the exhibit. And when the defendant denied ever having seen it, there was — that's a good example of a collateral issue. That was something that was the jury never heard the content of what was in the letter. It was never introduced in evidence. It was never argued. But don't you think we have enough collateral issues where you raise doubts about whether the defendant's telling the truth? When you examine them about four different collateral subjects and you pursue the questions to see, well, do you have records of that? Can you show that? Did you tell anybody else about it? When you ask all those questions, don't you think that all plants some kind of a doubt in the jury's mind about the credibility of the defendant, which is key to the case? I think it depends on how the questions are asked, whether or not they're follow-up to questions that have been already asked. In situations where courts have been found to cross the line, there have been examples of the court interrupting the direct examination of the defendant and cross-examining during the direct examination or tag-teaming with the prosecution during cross-examination. The manner in which these questions were asked did not follow along those lines. The court gave both parties opportunity to ask questions, and then after the court's questions, he also gave the parties the opportunity to follow up with additional questions so that there could be no impression that he was leaving with a witness that counsel then did not have an opportunity to follow up on. Counsel said that, if we could shift a little bit to the body language issue that Judge Escanlan started with, which is always troublesome on these, that in the motion for new trial, it was alleged that Judge Reel's tone and demeanor or manner showed disbelief, and the government didn't take any issue with that. Your Honor, first of all, the government did not respond to the statement of counsel in the motion for new trial because it was not a declaration under oath. It was a statement of trial that was a statement of counsel that was not made contemporaneous with the trial. There was no objection during the trial at any point to the tone of the questioning. And all that defense, the example that defense counsel, that the defense is cited to on page 86 of the excerpt of records is specifically the court questioning Shelley Chowdhury took on an argumentative tone. We would submit that there is no evidence in the record and there was no contemporaneous evidence as to the improper tone. Is that the only reference in the motion to the demeanor? Can I have one moment, Your Honor? There is a statement on an excerpt of record, page 79. The tone and manner of the court's cross-examination communicated the court's disbelief of the witness's testimony and no specifics. There's no allegation that the judge raised his voice, that the judge used some type of aggressive body language. There was absolutely no, nothing in the record about that. Furthermore, it's significant that when we look at the words that the judge used, this is not a case where, as has happened in other cases, where he was demanding the truth or through any comments he made suggesting that he thought that the witness was not giving him the truth, challenging the witness. The inconsistencies, the main inconsistency among the defense witnesses was the claim by several of the friends and family members that when they observed the victim, the defendant treated her as a family member. And the defendant's story was somewhat different. When he testified, he said that she wasn't important to him and that he spoke to her only through his wife. That was a primary inconsistency among the defense witnesses. That was not developed through the questioning of the court. The evidence that was elicited by the court did not detract from the credibility of the witnesses. Even the two witnesses, Nashima Chowdhury and Nashed Azad, of whom he asked questions about whether or not they'd spoken to anyone about the case or gotten information about the case, the answers were no, they had not spoken to anybody about the case. The problem with that question is it's sort of when did you stop beating your wife. The fact that the court is prompted to ask the question when the prosecutor hasn't suggests that the court has some doubts. And I'm sure the witness may deny it, but it certainly plants a thought with the jury that, gee, the judge thinks these people are getting together and coming up with the same story. That's what I find troublesome about an unsolicited so-called collateral question. But that's my observation. But what I'd like to, and you can come back to that if you want, but I was going to ask my other question and now I've forgotten what it was. Oh, I know what it was. It was in the witness who was asked at some length about her dual marriage or her dual living situation. That did seem to me to push a lot on credibility and disbelief on a collateral matter. It really did create in the jury's mind, certainly created in my mind reading it, that this woman seems to be dissembling. Well, those were follow-up questions on cross-examination questions. And to the extent that there was impeachment, it had been, and questions about the credibility had been elicited through the cross-examination. Did you ask her whether she was living with one man while she was married to another? Yes, Your Honor. You brought that up. Well, it came up, yes, we brought up that she did not live with the husband who was the American citizen. And then she said that she lived with him part of the week and that the rest of the week she lived with this other man. So that came out during the cross-examination. What was the purpose of pushing for addresses by the judge? I don't know, Your Honor. It sort of seems to go to credibility, doesn't it? All I can say on that is that if we look You know, she kept saying that she shared the apartment. And he kept saying, but you're living with him while you're married to someone else, which gives a somewhat different impression. She says she couldn't afford the apartment, so she was staying with her son and sharing the apartment. And he then said, well, you were living with Azeem while you were married to Miller. Is that right? Then she says, I used to stay with my children before this. We used to live with my children on weekends with my husband. You stay with your husband. What husband? Does that sound like a friendly, normal effort to get clarification? Didn't he know what husband she was talking about? It sounds to me like he was trying to undermine her morality and credibility. Well, it was an area that had been pursued on cross-examination. And where this case came down to a credibility determination and the problem with the credibility of the defense witnesses and, for example, the defendant's credibility, the issues with the defendant's credibility came out through his direct testimony and cross-examination when he made statements such as the victim had her own bedroom in Orange County when everyone else was three to four people to a bedroom, or statements such as she was happy all the time and there was no problem until her testimony came out. I'm curious about this question because I've just been reading this part of the transcript where he goes on for pages about her living with one man and not with another and, you know, keeps saying when you do this while you're married and all. Is there some relevance to it that you wanted to bring out to her fact that she lived with one man and was sharing an apartment with one while married to another? You brought that out for some reason that's relevant to her testimony? Well, we had asked her on cross-examination about not living with the husband because it was our belief that she was not living with the husband and that the marriage All right. So what was the reason for that? What's the relevance of it, whether she's living with her husband? Our questioning was directed to show that it was a sham marriage and that she had married him to get citizenship. And what does that have to do with anything in this trial? It was in a way to show her credibility. So you were trying to prove that she was not a credible witness by these questions. And so that's what Jadriel was trying to prove by these several pages of cross-examination when he thought you didn't do a good enough job. We would submit that in those questions, Your Honor, he did not take over the role as prosecutor. He came close to the line and his questioning was not ideal. But when we look at the trial as a whole, he did not cross that line and did not come close to doing what has happened in the other cases. He did not at no point did he comment on the credibility of any of the witnesses or comment on the evidence. At no point did he interrupt counsel's questioning and take over direct exam. He didn't rehabilitate any of the government witnesses after they were impeached. He did not tag team with the prosecution in the middle of any cross-examination. And he didn't express an opinion on or harass or badger any witnesses on the questioning as had been done in other cases. The Shelly Chowdhury, the essence of her testimony was about her observations of how the victim was treated and her refuting what the victim had said about the defendant having beaten the victim in Shelly Chowdhury's presence. And none of the court's questioning was directed towards that central issue. And I would just add that the credibility that was damaged, the damage to the credibility of the witnesses was done during the direct and cross-examinations, and the credibility call in this case came down to issues that were not elicited from the defense, from the court's questioning. And ideally, the court would not have asked all the questions that it asked, but ultimately the questions had a minimal impact on the trial when we look at the cumulative evidence in the case. The government's argument was that the credibility call came down to the fact that the defense witnesses were friends and family members of the defendant. The defendant claimed that the victim was happy and treated well until six weeks before she ultimately left, and that it was because of this relationship supposedly with Halim that she was cooking up this story. The defense provided absolutely no explanation or motive for the witnesses who were neighbors and independent witnesses, such as Faisal Qureshi and Sharman Matab, to fabricate their claim that a year before Halim ever came into the picture, they heard the defendant admit to beating the victim, saw her injured, saw her unhappy. That was where the credibility call came down and was cement. And the – while ideally the court would not have asked these questions, he did not prejudice the defense case. I would note also significant, for example, Mohammad Azad was a very important defense witness because he was the only witness who could place Sheffaly and Halim appearing romantic, and that was a cornerstone of the defense case. The one witness who saw the beatings said that he was having a relationship with Sheffaly, and it was denied by Sheffaly and it was denied by the witness. Mohammad Azad testified that he saw them together three times and they appeared to be romantically involved. The court did not question him at all about those encounters or about his relationship with the defendant in any bias. The only questioning that the court engaged in on that witness, who was a crucial defense witness, was to follow up on statements he made and redirect that he'd been threatened by the agents and to clarify that. The Constitution does not guarantee that. I think we'd better try to wind this up because we're over time already. Okay. Thank you. Thank you. Well, we'll give you a minute if you want. I said we would give you a minute if you would like. Well, thank you. But a minute. I just think if there's the combination of numerous factors here that indicate that this particular judge overstepped his role. Okay. And no, I think that we know all of those things. I don't think there's anything specific you felt was a misstatement.  Thank you. All right. Thank you both. Thank you, Counsel. Thank you. Case just argued will be submitted.
judges: Reinhardt, O'scannlain, Fisher